### GROS v. ISTROUMA FOUNDRY & MACHINE CO., Inc.
### No. 1402.

Court of Appeal of Louisiana.
First Circuit.
Dec. 4, 1934.

F. J. Whitehead, of Port Allen, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellee.

ELLIOTT, Judge.

Joel J. Gros, the plaintiff, claims to have received injury while raising a heavy iron casting in the foundry of Istrouma Foundry & Machine Company, Inc., defendant, which has produced in him a permanent total disability to do work of any reasonable character. He claims that he was employed by and working for Istrouma Foundry & Machine Company, Inc., at the time, and claims of the said defendant compensation on said account for 400 weeks, less 11 weeks for which he has been paid.

The injury is alleged to have been sustained on October 3, 1933.

The defense is that plaintiff suffers with rheumatism, which affliction did not arise out of or in the course of his employment.

There was judgment rejecting plaintiff's demand, and he has appealed.

Plaintiff, following his alleged injury, was paid compensation for 11 weeks, amounting in the aggregate to $170.60. The testimony in the case, except that of the plaintiff and his wife, is all by the medical profession. The principal witness for the plaintiff was the physician who treated him. The defense called two local physicians who had examined plaintiff and two others who gave their opinion based on X-ray plates made of the sacroiliac region. These plates were made by a local physician. The injury is said to have consisted of a strain of the ligaments of the back and injury to the sacroiliac joint, causing it to come apart. The plaintiff gives the following account of how his injury occurred:

"Q. You stated that you had not been back to work since October 3rd. What was the cause of your stopping work at that time? A. I came home October 3rd and went to bed and stayed there with my back. I could not get up the next morning my back was so sore.

"Q. What was the cause of that back pain? A. On October 3rd we were raising a casting, an iron casting. We had it flat on the ground and when I went to turn, it kind of slipped. I felt my back right then give way.

"Q. Were you able to stand up straight? A. Not right away; in about 10 or 15 minutes I could stand up. I finished the day's work that day. I could not get out of bed the next morning. I could not go no more.

"Q. How long were you in bed from that injury? A. A little better than 2 weeks."

Plaintiff as a witness in his own behalf says *we* were raising a casting; and that *we* had it flat on the ground, etc., implying that other men beside himself were engaged in the work of raising the casting. But none were called to support his testimony on the subject. He says that he finished the day's work, but the evidence does not show the time of day the alleged injury occurred nor how long he worked afterwards. He says he felt his back right then give way, but no wit-

ness was called who heard him make any remark or outcry that he had received a hurt of any kind. He says he left the foundry and went home, but it does not appear that before leaving he notified his foreman or anybody else connected with the foundry that he had received an injury, and none were called nor questioned on the subject. How he reached home, the distance traveled, and whether he rode or walked, was assisted or not, do not appear. It seems a reasonable conclusion that, if he had received a severe hurt and in the way claimed, somebody in the foundry besides himself would have known about it at the time. As it is, the entire matter rests on the weight which should be given to the testimony of the plaintiff. His claim that he received a back strain and sacroiliac injury while at work is seriously weakened by the fact that, according to his own testimony, it seems a proper conclusion that others were present at the time helping him at the work, yet he did not call them. If an injury sudden and severe had been received while lifting, a physician would likely have been called to come to the foundry or to see him at home that evening. The physician was not called until next morning. The physician testifies that he had treated plaintiff on account of strain to his back on three previous occasions. On the last occasion which, as stated, was October 3, 1933, he testified that he found the plaintiff suffering with sacroiliac strain, but his further testimony is persuasive that the same trouble which plaintiff was found to have on October 3, 1933, was likely the same thing with which he had suffered on previous occasions. The diagnosis of the physician called to plaintiff's bedside, and who has treated him since then until practically the time of the trial, and who had treated him on two or three previous occasions, is entitled to great weight; but we do not feel that we can overlook and put aside the testimony given by two other local physicians who had examined plaintiff personally, although only a day before the trial, and two more residing in New Orleans who gave opinion testimony on the subject based on their examination of X-ray plates made by Dr. Williams. These four physicians gave it as their opinion that plaintiff has no sacroiliac or back injury but suffers with arthritis, commonly called "rheumatism." That his rheumatism is not due to a strain or injury to the back, but to other causes explained in their testimony. The testimony shows that there exists in plaintiff a slight widening of the sacroiliac; that this is

not unusual, many people have it; that it causes no harm nor hurt unless produced by strain. According to the testimony it takes a violent strain and strong force applied to the sacroiliac joint to bring about abnormal widening. A strain and force sufficient to cause such an injury is calculated to cause an immediate expression of pain, yet others were present at the time and nobody heard plaintiff say a single word about having received injury of any kind.

The four physicians who gave testimony and opinions at the instance of the defendant convinced the lower court that plaintiff had not established a right to recover. We are not satisfied that the court erred. It is our opinion that the case was correctly decided.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.